COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Humphreys and Senior Judge Coleman
Argued at Chesapeake, Virginia


HOWARD DODD BAKER

OPINION BY
v.        Record No. 0865-09-1        JUDGE ROBERT J. HUMPHREYS
OCTOBER 19, 2010

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Bruce H. Kushner, Judge[1]

Katherine Currin Braun, Assistant Public Defender (Office of the
Public Defender, on brief), for appellant.

Jennifer C. Williamson, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Howard Dodd Baker ("Baker") appeals his conviction in the Chesapeake Circuit Court on

one count of possession of cocaine, in violation of Code § 18.2-250.  He alleges the circuit court

erred in refusing to suppress the evidence against him, arguing it was the result of an unlawful

pat down and ultimate search of his person.  The Commonwealth argues the pat down was

lawful, but concedes the evidence was unlawfully obtained in the ensuing search of Baker's

pants pocket.  The Commonwealth contends this Court should apply the inevitable discovery

doctrine to the facts and affirm the trial court.

I. Background

At around 12:45 a.m. on June 2, 2007, Officer Justin K. Mathews ("Mathews") of the

Chesapeake Police Department was on a routine patrol in the "high crime, high narcotic" area of

_____

[1] The Honorable E. Preston Grissom presided over Baker's motion to suppress and his
motion to reconsider.  The Honorable Marjorie Taylor Arrington accepted Baker's conditional
guilty plea.

Berkley Avenue and Windy Road in Chesapeake, when he observed Baker "operating a bicycle in that area without a headlight." Mathews decided to detain Baker because "the city code requires that a bicycle being operated on city streets requires a headlight between sunset and sunrise." Mathews made contact with Baker and explained the reason for the stop. Mathews immediately noticed that Baker had "a strong odor of alcoholic beverage emitting from his person" and "bloodshot, watery, glassy eyes." Mathews also noted that Baker was having "a little trouble balancing," as he straddled his bike. Baker was "sway[ing] to and fro."

Mathews obtained Baker's ID, and asked if he could search Baker. At that point, Baker "became nervous," and refused permission to search. Even so, Mathews told Baker to put his hands on his head for a pat down. As Mathews ran his hands over Baker's pockets on Baker's right side, he saw that a "glass tube object" with "some type of residue in it" was sticking out of "the small coin pocket above the large pocket" of Baker's jeans. Suspecting that the glass tube object was a crack pipe, Mathews removed it from Baker's pocket. Mathews put the tube in his upper shirt pocket, and informed Baker that he was under arrest. At that point, Baker broke free from Mathews and attempted to flee. After a brief chase, Mathews captured Baker and took him into custody.

Prior to his trial, Baker filed a motion to suppress the evidence. The trial court held a hearing on the motion on April 17, 2008. At the hearing, Baker inquired as to Mathews's reason for the pat down. Mathews responded, "well, any time I stop for pedestrians or subjects on a bike . . . before I sit back in my patrol car and they're standing, I will conduct a pat-down, unless it's a consensual encounter and they deny such, for my safety, that they don't have anything that's going to hurt me." Mathews denied suspecting the glass tube was a weapon when he removed it from Baker's pocket, admitting instead that he "suspected it to be a crack pipe at that point."

Upon the conclusion of Mathews's testimony, Baker argued there was no "probable cause" for the pat down in this case. Baker also argued the seizure of the pipe was not supported by probable cause because the unlawful nature of the pipe was not readily apparent to Mathews at the time he removed it from Baker's pocket. The Commonwealth disagreed, but argued alternatively that even if the search was unlawful, "the arrest was an inevitable discovery."

The trial court found, based upon the totality of the circumstances, that Mathews's actions were reasonable. Considering the time of night, the nature of the neighborhood, and the fact that Baker "was not in full control of his faculties," the court concluded the pat down was lawful. The trial court also found that the crack pipe was in plain view when Mathews seized it. Ultimately, the court denied the motion to suppress.

On September 29, 2008, the parties appeared in the trial court on Baker's motion to reconsider. Baker argued that the Virginia Supreme Court's recent decision in McCain v. Commonwealth, 275 Va. 546, 659 S.E.2d 512 (2008), decided one day after the trial court's initial ruling on Baker's motion to suppress, compelled a different ruling on his motion. Upon the conclusion of the arguments, the trial court distinguished McCain from the facts of Baker's case, and, again, denied the motion to suppress. Thus, on November 13, 2008, Baker entered a conditional guilty plea expressly retaining his right to appeal the trial court's ruling on his motion to suppress. The trial court sentenced Baker to four years imprisonment and then suspended it in its entirety.

Baker, thereafter, noted this appeal.

## II. Analysis

### Did the trial court err in denying Baker's motion to suppress?

Baker contends on appeal that the trial court erred in denying his motion to suppress because (1) the evidence proved Mathews did not have the requisite reasonable suspicion for the

pat down; and (2) the illegal nature of the pipe in Baker's pocket was not immediately apparent to Mathews when he seized it. The Commonwealth concedes the seizure of the pipe was unlawful, but asserts that the tainted evidence is admissible under the doctrine of inevitable discovery.

In reviewing a trial court's denial of a motion to suppress, "we determine whether the accused has met his burden to show that the trial court's ruling, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error." Roberts v. Commonwealth, 55 Va. App. 146, 150, 684 S.E.2d 824, 826 (2009) (citing Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002)). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). "However, we consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment." Hughes v. Commonwealth, 31 Va. App. 447, 454, 524 S.E.2d 155, 159 (2000) (en banc) (citing McGee, 25 Va. App. at 198, 487 S.E.2d at 261).

The Pat Down

Baker first contends on appeal that the pat-down search of his person violated the Fourth Amendment because Mathews did not have a reasonable, articulable suspicion that Baker was armed and presently dangerous. The Commonwealth disagrees with that contention, arguing the trial court "correctly concluded that Mathews had a reasonable, articulable suspicion that Baker may have been armed and dangerous, and, therefore, could perform a pat-down search for weapons."

> The United States Supreme Court has articulated "a
> narrowly drawn authority to permit a reasonable [pat-down] search

for weapons for the protection of the police officer . . . where [the] police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that . . . the persons with whom he is dealing may be armed and presently dangerous."

Roberts, 55 Va. App. at 153, 684 S.E.2d at 827 (alterations in original) (quoting Terry v. Ohio, 392 U.S. 1, 27, 30 (1968)).  An officer may not automatically conduct a search for weapons during the course of a Terry stop.  McCain, 275 Va. at 554, 659 S.E.2d at 517.  He may frisk for weapons only if he develops reasonable suspicion during the stop "to believe that the particular person to be frisked is armed and dangerous."  Id.  Such "reasonable, individualized suspicion" is required "[e]ven in high crime areas," where "any given individual" may be armed," id. (quoting Maryland v. Buie, 494 U.S. 325, 334 n.2 (1990)), in large part because "[t]he purpose of [a] 'pat-down' search is not to uncover evidence of criminal activity, but to permit the officer to conduct his investigation without encountering a violent response."  Murphy, 264 Va. at 573-74, 570 S.E.2d at 839.

In other words, "the Supreme Court's decision in Terry does not permit a generalized policy that authorizes a police officer to frisk all persons."  McCain, 275 Va. at 555, 659 S.E.2d at 517.  "[A]n officer may lawfully pat-down a suspect only when the officer can 'point to particular facts from which he reasonably inferred that the individual was armed and dangerous.'"  Moore v. Commonwealth, 12 Va. App. 404, 406, 404 S.E.2d 77, 78 (1991) (quoting Sibron v. New York, 392 U.S. 40, 64 (1968)).  "Circumstances relevant in this analysis include characteristics of the area surrounding the stop, the time of the stop, the specific conduct of the suspect individual, the character of the offense under suspicion, and the unique perspective of a police officer trained and experienced in the detection of crime."  McCain, 275 Va. at 554, 659 S.E.2d at 517.  While "nervous, evasive behavior is [also] a pertinent factor in determining reasonable suspicion," Illinois v. Wardlow, 528 U.S. 119, 124 (2000), mere nervousness during

the course of a <u>Terry</u> stop, "standing alone, is insufficient to justify a frisk for weapons." <u>McCain</u>, 275 Va. at 554, 659 S.E.2d at 517; <u>see</u> <u>also</u> <u>Moore</u>, 12 Va. App. at 406-07, 404 S.E.2d at 78. That is, "'[a]n officer's perception of a suspect's nervousness [and verbal agitation], without additional articulable facts reasonably suggesting the suspect is armed and presently dangerous, cannot justify a pat-down search.'" <u>Roberts</u>, 55 Va. App. at 154, 684 S.E.2d at 828 (alterations in original) (quoting <u>Thompson v. Commonwealth</u>, 54 Va. App. 1, 8, 675 S.E.2d 832, 835 (2009)). Indeed, "'[i]f subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be "secure in their persons, houses, papers, and effects," only in the discretion of the police.'" <u>Terry</u>, 392 U.S. at 22 (quoting <u>Beck v. Ohio</u>, 379 U.S. 89, 97 (1964)).

In <u>McCain</u>, our Supreme Court reviewed the circumstances under which a police officer conducted a pat-down search for weapons on a passenger of a vehicle that was stopped for a traffic violation. 275 Va. at 549, 659 S.E.2d at 514. The officer in that case had observed both the driver and the passenger approach a known drug house for only a minute before returning to their car and driving away. The officer then followed the vehicle and stopped it for a driving violation. During the stop, another officer arrived in response to a request for backup and asked the passenger, Tyrone McCain, to step out of the vehicle. <u>Id.</u> at 550, 659 S.E.2d at 514-15. When the second officer requested permission to frisk McCain, McCain, who "up to that point . . . had complied with every request made by the officers," declined permission for the search. The second officer, nevertheless, "ordered McCain to place his hands on the vehicle and performed a pat-down search on him." <u>Id.</u> at 550-51, 659 S.E.2d at 515.

The second officer later testified that McCain seemed nervous as he began to pat him down and that the first officer had told him McCain seemed "edgy." <u>Id.</u> at 551, 659 S.E.2d at 515. The second officer initially only found keys in McCain's pocket, but "later during the

pat-down search, [the second officer] asked McCain if he had any weapons on his person, and McCain said that he had a gun." Id. The second officer removed the gun from McCain's waistband and placed McCain under arrest. During a search incident to that arrest, the first officer discovered cocaine in McCain's pocket. Id. The neighborhood where the traffic stop occurred was "known for drugs, known for shots fired," and both officers regularly patrolled the area. The second officer later explained that "'for officer safety,' he conducts a pat-down search of every person he interacts with in that neighborhood, whether they want him to or not." Id.

McCain filed a motion to suppress in the trial court. After a hearing, the trial court found that McCain "was seized for purposes of the pat-down search, but that his detention for that purpose was constitutional." Id. This Court, thereafter, affirmed the trial court's denial of the motion to suppress, and McCain appealed the matter to the Virginia Supreme Court. Id. at 549-50, 659 S.E.2d at 514. The Supreme Court reversed, finding "McCain's actions gave the officers no legitimate reasonable suspicion that he was armed and dangerous." Id. at 554, 659 S.E.2d at 517. The Court opined,

> "[a]lthough the character of the location and the time are relevant factors, they did not provide either officer a particularized and objective basis for suspecting McCain was armed and dangerous[,] . . . the officers did not notice any physical or mental impairment that would indicate drug use by McCain, and there were no physical or other characteristics observed by the officers that indicated McCain might be armed and dangerous. Although he may have appeared to be nervous, McCain identified himself when requested, did not make any furtive movements, and cooperated with the police officers until Thompson asked permission to do a pat-down search.

Id. at 554-55, 659 S.E.2d at 517. On these facts, the Supreme Court concluded, "[t]he totality of the circumstances, namely, the time of day, the location in a 'high crime' area," and McCain's presence at a known drug house "did not create reasonable suspicion sufficient to justify detaining and frisking McCain." Id. The Supreme Court then concluded that, since "[n]o

- 7 -

additional circumstances developed during the course of the traffic stop that would support a reasonable suspicion that McCain was . . . armed and dangerous," McCain's motion to suppress should have been granted. Id. at 555, 659 S.E.2d at 517-18.

In the instant case, Mathews detained Baker merely for riding a bicycle without a light in what Mathews similarly described as a "high crime, high narcotic" neighborhood at 12:45 a.m. Like McCain, Baker obediently complied with every request made by Officer Mathews up to the moment Mathews requested permission to pat him down. As in McCain, although Baker seemed nervous at the prospect of being patted down, the record contains no factual evidence from which any reasonable police officer could infer that Baker was either violent or that he was in possession of a weapon. Baker made no threats or other furtive gestures suggesting Mathews was in any danger. Rather, as in McCain, Mathews failed to articulate any facts and circumstances that, when viewed objectively, would lead any reasonable police officer to conclude that Baker was armed or dangerous. Instead, Mathews's decision to perform a pat down resulted from his own generalized policy of patting down "every pedestrian or subject on a bike" before returning to his patrol car to check their identification. Indeed, as was the case in McCain, Mathews testified that he always conducts a pat down "unless it's a consensual encounter." Thus, Mathews's decision to pat Baker down was clearly automatic and not based on any particularized and objective set of facts from which a reasonable officer could infer Baker was armed and dangerous. Therefore, as in McCain, the trial court erred in concluding that the pat down was constitutionally proper.[2]

---

[2] Neither is it of any particular importance that Baker was intoxicated. While "[t]his Court has recognized there is a relationship between drug distribution and the presence of weapons," see, e.g., Logan v. Commonwealth, 19 Va. App. 437, 445, 452 S.E.2d 364, 369 (1994), Virginia appellate courts have not recognized a similar nexus between mere public intoxication and the possession of weapons.

Baker also contends that the seizure of the pipe from his pocket was a clear violation of the Fourth Amendment. The Commonwealth concedes Mathews "lacked probable cause to remove the pipe from the defendant's pocket," but argues that the evidence is admissible under the doctrine of inevitable discovery.

"[T]he determination whether a law enforcement officer had sufficient probable cause to seize contraband from a person in the course of a Terry pat-down search requires a consideration of the totality of the circumstances surrounding the search, as well as a consideration of the officer's knowledge, training and experience." Cost v. Commonwealth, 275 Va. 246, 251, 657 S.E.2d 505, 507 (2008). An officer conducting a Terry frisk may seize an object from a suspect's pocket only if he "reasonably believes the object could be a weapon," Lansdown v. Commonwealth, 226 Va. 204, 213, 308 S.E.2d 106, 112 (1983), or if he "can identify the object as suspicious under the 'plain feel' variation of the plain view doctrine." Cost, 275 Va. at 251-52, 657 S.E.2d at 508 (citing Minnesota v. Dickerson, 508 U.S 366, 375-76 (1993)). "However, an item may not be retrieved [even] under the plain view doctrine unless it is 'immediately apparent' to the officer that the item is evidence of a crime." Id. at 252, 657 S.E.2d at 508 (citations omitted). "'[W]hen the character of the item is not immediately apparent from the 'pat[-]down' search, and the officer does not reasonably suspect that the item is a weapon, further search regarding the item is not allowed [by the Fourth Amendment] because such an evidentiary search is unrelated to the justification for the frisk' of the suspect." Id. (alterations in original) (quoting Murphy, 264 Va. at 574, 570 S.E.2d at 839).

In Murphy, the Virginia Supreme Court held that marijuana contained in a plastic bag in Murphy's pants pocket was illegally seized during a pat-down search "because the character of the bag's contents as contraband was not immediately apparent from the frisk." 264 Va. at 575,

570 S.E.2d at 839.  Thus, the officer in that case did not have probable cause to seize the bag and its contents without a warrant.  Id.

In the instant case, Mathews testified he did not believe the glass tube was a weapon when he removed it from Baker's pocket, admitting instead that he "suspected it to be a crack pipe at that point."  Although the glass pipe was protruding from Baker's pocket with "some type of residue in it," the nature and character of the glass tube and its contents was, as the Commonwealth concedes, not immediately apparent to Officer Mathews when he removed the pipe from Baker's person.  Thus, as the Commonwealth correctly notes, "Mathews lacked probable cause to remove the pipe from [Baker's] pocket."  Therefore, Mathews clearly violated the Fourth Amendment when he seized the pipe.

Inevitable Discovery

The Commonwealth, nevertheless, asserts this Court should affirm the trial court because the evidence would ultimately have been discovered during Baker's lawful arrest for public intoxication.

"Ordinarily, evidence obtained as the result of an unlawful search is subject to suppression under the exclusionary rule."  Commonwealth v. Jones, 267 Va. 532, 535, 593 S.E.2d 204, 206 (2004) (citing Weeks v. United States, 232 U.S. 383 (1914); Hart v. Commonwealth, 221 Va. 283, 287, 269 S.E.2d 806, 809 (1980)).  "However, not all illegally obtained evidence is subject to suppression."  Id. (citing Wong Sun v. United States, 371 U.S. 471, 487-88 (1963)).  "One of the exceptions to the exclusionary rule is the doctrine of inevitable discovery," which provides, "that evidence obtained by unlawful means is nonetheless admissible 'if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.'"  Id. at 535-36, 593 S.E.2d at 206 (quoting Nix v. Williams, 467 U.S. 431, 444 (1984)).

However, we need not decide whether it was inevitable that Baker would necessarily have been arrested for public intoxication and searched incident to that arrest despite the fact that this issue was not ruled upon by the trial court. This case involves a conditional guilty plea under Code § 19.2-254, which mandates that we remand the case to the trial court to permit the possible withdrawal of the guilty plea if an appellant prevails on appeal without regard to any inevitable discovery or harmless error analysis. In fact, the Virginia Supreme Court specifically rejected an application of the inevitable discovery doctrine in a similar case, Hasan v. Commonwealth, 276 Va. 674, 667 S.E.2d 568 (2008). In that case, Qaadir Hasan entered a conditional guilty plea after the trial court denied his motion to suppress, reserving his right to appeal the trial court's ruling on his motion to suppress and to withdraw his plea if successful on appeal. Id. at 678, 667 S.E.2d at 570. This Court later affirmed the trial court's denial of Hasan's motion to suppress, and Hasan appealed his case to the Virginia Supreme Court. Id. at 678, 667 S.E.2d at 570-71. After the Supreme Court found that this Court erred in affirming the denial of the motion to suppress, it addressed the Commonwealth's alternative argument that "a reversal of Hasan's conviction would be improper because the evidence . . . would have been admissible under the doctrine of inevitable discovery." Id. at 681, 667 S.E.2d at 572. The Supreme Court disagreed with the Commonwealth, finding,

> Th[is] argument[], which [is] in the nature of a harmless error analysis, [is] inapplicable to this case. Even if the Commonwealth is correct about the inevitable discovery of the weapon . . . , Hasan entered a conditional guilty plea pursuant to Code § 19.2-254, which provides in part that "[i]f the defendant prevails on appeal, he shall be allowed to withdraw his plea." Hasan has prevailed on appeal regarding suppression of the statement at issue in this case. He is entitled by statute to withdraw his plea. Hasan must be given the opportunity to reassess the admissible evidence that may be used against him and, if the Commonwealth wishes to continue its prosecution, demand a trial if he so desires.

Id. (quoting Code § 19.2-254).

- 11 -

In the instant case, Baker, like Hasan, entered a conditional guilty plea pursuant to Code § 19.2-254. Baker, like Hasan, has also prevailed on appeal regarding suppression of the evidence at issue in this case. It follows that, like Hasan, Baker is entitled by statute to withdraw his plea. We, thus, reject the Commonwealth's suggestion that the inevitable discovery doctrine applies here and reverse the trial court's refusal to suppress the evidence. We further remand Baker's case to the trial court so Baker can decide whether to withdraw his plea.

### III. Conclusion

Based on the foregoing, we hold that the pat down in this case was unlawful because Officer Mathews did not articulate any particularized reason to believe Baker was armed and presently dangerous. Further, the Commonwealth concedes the resulting search of Baker's pocket and seizure of the crack pipe was unsupported by probable cause, and we agree. However, the Commonwealth's contention that reversal is inappropriate under the doctrine of inevitable discovery is without merit in light of the Supreme Court's decision in Hasan. Thus, we reverse the trial court's denial of the motion to suppress and remand the matter to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.