COURT OF APPEALS OF VIRGINIA

Present:   Judges Decker, AtLee and Senior Judge Frank
Argued at Norfolk, Virginia


VINCENT EDWARD GONZALES

                                                        MEMORANDUM OPINION* BY
v.        Record No. 0950-15-1                          JUDGE ROBERT P. FRANK
                                                        APRIL 5, 2016

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                             David W. Lannetti, Judge

            James B. Covington for appellant.

            Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
            Attorney General, on brief), for appellee.


        Vincent Edward Gonzales, appellant, was convicted of cocaine distribution and

possession of a firearm while possessing a Schedule I or II controlled substance with the intent to

distribute. On appeal, he asserts the trial court erred in denying his motion to suppress. For the

reasons that follow, we conclude the trial court erred by denying appellant's motion, reverse

appellant's convictions, and remand the case for further proceedings if the Commonwealth be so

inclined.[1]

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] The conviction and sentencing orders indicate that appellant was convicted of cocaine
distribution. The plea agreement, however, indicates that appellant entered a conditional guilty
plea to possession of cocaine with intent to distribute. We remand for the trial court to address
this discrepancy and correct any clerical errors in the conviction order dated February 12, 2015
and the sentencing order dated May 8, 2015.

Background

"In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (citation omitted). While we are bound to review *de novo* the ultimate questions of reasonable suspicion and probable cause, we "review findings of historical fact only for clear error[2] and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996) (footnote added). So viewed, the evidence proved that on October 31, 2013, Officer Benson went to DePaul Hospital to investigate a domestic assault. Appellant's wife, the victim, had a broken nose and injuries to her face as a result of an argument with appellant. He refused to let her out of the car and elbowed her in the face. The victim advised Benson that appellant was at their shared residence[3] at a certain address on Fenton Circle. She also told the officer there was marijuana, cocaine, and a pistol at the residence. She gave the officer permission to search the house.

Benson went to the address to investigate the assault and requested Officers R. Johnson and DeMartino to accompany him because the victim indicated a pistol was in the residence. Benson knocked on the front door.[4] Appellant came to the door, closed the door behind him, and stepped onto the front porch. Benson explained he was investigating the domestic assault and

---

[2] "In Virginia, questions of fact are binding on appeal unless 'plainly wrong.'" McGee, 25 Va. App. at 198 n.1, 487 S.E.2d at 261 n.1 (citations omitted).

[3] Appellant denied he lived at that residence, indicating his mother was the owner.

[4] Appellant testified Benson opened the front door without his permission.

advised appellant of his rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). He then arrested appellant for domestic assault.

Appellant was not wearing shoes at the time of the arrest and indicated he needed to retrieve his shoes from inside the house.

Officer Johnson looked inside the door for the shoes but did not find them. Appellant then told Johnson the shoes were in his brother's room and "[appellant] said that he could take [the officer] to his brother's room to get his shoes." Appellant led Officers Johnson and DeMartino to the brother's room where they found the shoes. The officers then took appellant to the living room where they assisted appellant in putting on his shoes. The officers did not "sweep" the house upon entry.

While retrieving the shoes, appellant told the officers he did not live there, but that his mother owned the house. Officer Benson stepped out of the house to call appellant's mother to verify ownership and to attempt to obtain her consent to search the house.

Officers Johnson and DeMartino remained in the residence with appellant. They asked appellant if anyone else was in the house. Appellant said there was no one else there. The officers had no specific information that anyone else was in the house – they neither saw nor heard anyone.

While appellant was on the couch, Johnson conducted a protective sweep of the rooms down the hallway to insure no one else was in the house. He did not sweep the third bedroom, the garage, or the kitchen. He said he was concerned for officer safety because of the potential firearm in the residence.

The first door to the left was closed. Johnson opened the door and determined it was a child's room. He did not enter or sweep that room. The door to the second room was open. He looked into the room, without entering the room and observed a digital scale with some white

powder on it. Upon "poking" his head inside to confirm no one was in the room, Johnson noticed a closed closet. The officer opened the closet and, directly in front of him, at eye level, was a black and silver handgun. No one was in the closet. Johnson seized nothing at that time. He left the room and checked another closet off the hallway before returning to the living room.

After speaking with DeMartino, Johnson went outside to talk to Benson. Benson was on the phone with appellant's mother. Once Johnson told Benson that he found drugs, Benson had no further need to obtain the mother's consent.[5] Benson then contacted detectives who arrived shortly thereafter.

Detective Allison arrived at the scene and saw appellant seated in a police unit. Johnson advised Allison of the suspected cocaine on the digital scale. Allison took a small sample of the powdery substance and placed it in a field test kit. The substance tested positive for cocaine. He then obtained a search warrant and returned to the residence. Pursuant to the search warrant, Allison recovered drugs, paraphernalia, a handgun, and a digital scale.

Appellant filed a motion to suppress, challenging the legality of the police entry, the protective sweep, and the legality of the search warrant, since the warrant was based on illegally seized material.

The trial court denied the motion, finding: (1) appellant consented to the entry into the residence; (2) appellant willingly led the officers from room to room in search of the shoes: (3) it was objectively reasonable for the officers to believe that the consent to locate appellant's shoes allowed the officers to search until they found the shoes; (4) appellant never objected to the officers' presence once inside the house; (5) the officers had information concerning the presence of a pistol on the premises which, coupled with the possibility of other people being present, gave the officers a reasonable suspicion that a dangerous person might be present and;

---

[5] She never gave Benson consent.

- 4 -

(6) that despite appellant's denial that anyone else was present, the officers, once lawfully inside, were justified in ensuring the accuracy of appellant's denial.

After the trial judge denied the motion to suppress, appellant entered a conditional guilty plea, and was convicted of the pending charges.

This appeal followed.

<u>Probable Cause To Arrest and Warrantless Arrest</u>

Appellant's first assignment of error states, "The Trial Court erred in denying the Defendant's Motion to Suppress the fruits of his warrantless arrest in his residence because the arrest was made without sufficient investigation to establish probable cause for such an arrest." Clearly this assignment is limited to probable cause to arrest, and we are limited to addressing only that issue. However, appellant presents no argument in support of the contention that he was arrested without probable cause. Instead, he cites <u>Jefferson v. Commonwealth</u>, 27 Va. App. 1, 497 S.E.2d 474 (1998), in support of an argument that he was illegally arrested in the curtilage of his home without a warrant. Assignment of Error I does not challenge the legality of the arrest based on an unlawful arrest within appellant's curtilage, as appellant argues in his brief.

In an assignment of error, an appellant must identify the specific error committed by the trial court. <u>See</u> Rules 5A:12(c)(1) and 5A:20(c). Appellant must "'lay his finger on the error' in his [assignment of error]." <u>Carroll v. Commonwealth</u>, 280 Va. 641, 649, 701 S.E.2d 414, 418 (2010) (quoting <u>First Nat'l Bank of Richmond v. William R. Trigg Co.</u>, 106 Va. 327, 342, 56 S.E. 158, 163 (1907)) (footnote omitted). An argument that is not addressed by the assignment of error is not subject to review on appeal. <u>Smith v. Commonwealth</u>, 65 Va. App. 288, 302-03, 777 S.E.2d 235, 242-43 (2015).

Here, because the assignment of error does not assert that appellant was illegally arrested in the curtilage of his home, we lack the ability to address appellant's curtilage argument.

By the same token, as appellant has conceded, his brief was fatally deficient with respect to his assertion in the assignment of error that he was arrested without probable cause. He never developed that argument. He only cited "curtilage" cases. He cited no "probable cause" cases nor did he argue the police had no probable cause to arrest him for domestic assault.

> "Rule 5A:20(e) requires that an appellant's opening brief contain '[t]he principles of law, the argument, and the authorities relating to each question presented.' Unsupported assertions of error 'do not merit appellate consideration.'" Fadness v. Fadness, 52 Va. App. 833, 850, 667 S.E.2d 857, 865 (2008) (alteration in original) (quoting Jones v. Commonwealth, 51 Va. App. 730, 734, 660 S.E.2d 343, 345 (2008)). An appellate court "is not a depository in which the appellant may dump the burden of argument and research." Id. "[S]trict compliance with the rules permits a reviewing court to ascertain the integrity of the parties' assertions which is essential to an accurate determination of the issues raised on appeal." Id. (quoting Jones, 51 Va. App. at 734-35, 660 S.E.2d at 345). Accordingly, when a party's failure to strictly adhere to the requirements of Rule 5A:20(e) is significant, this Court may treat the assignment of error as waived. Id.

Milam v. Milam, 65 Va. App. 439, 465-66, 778 S.E.2d 535, 548 (2015).

Because appellant has not presented any argument in support of his contention that the officers lacked probable cause to arrest him, we conclude his failure to comply with Rule 5A:20(e) is significant. Thus, he has waived that argument on appeal. See Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008).

### Consent

Appellant next contends that he did not consent to the officers' entry into the residence.[6] And even if there was consent, he argues that his consent was limited to retrieving his shoes. He asserts that once the limited purpose of the consent was achieved, the police were obligated to leave the premises.

---

[6] Appellant does not contend the consent was a product of duress or coercion.

The trial court found appellant consented to the entry, concluding appellant "willingly led officers from room to room in search of his shoes . . . ." The court found that this consent allowed the police to search until they ultimately discovered the shoes.

"Both the presence of consent to search and any related limitations are factual issues for the trial court to resolve after consideration of the attendant circumstances." Bynum v. Commonwealth, 23 Va. App. 412, 418, 477 S.E.2d 750, 753 (1996). "'Consent to a search . . . must be unequivocal, specific and intelligently given . . . and it is not lightly to be inferred.'" Hawkins v. Commonwealth, 65 Va. App. 101, 107, 774 S.E.2d 492, 495 (2015) (quoting Jean-Laurent v. Commonwealth, 34 Va. App. 74, 78-79, 538 S.E.2d 316, 318 (2000)) (other citation and quotation marks omitted). We have observed that "an appellant's mere acquiescence to a search is inadequate to establish that he or she voluntarily consented to it, and the Commonwealth bears a heavier burden 'where the alleged consent is based on an implication.'" Id. (quoting Jean-Laurent, 34 Va. App. at 78-79, 538 S.E.2d at 318) (other citation and quotation marks omitted). "[C]onduct which evidences nothing more than an acquiescence, particularly when no request to search has been made, has been held insufficient to constitute consent." Lawrence v. Commonwealth, 40 Va. App. 95, 102-03, 578 S.E.2d 54, 58 (2003) (quoting Jean-Laurent, 34 Va. App. at 79, 538 S.E.2d at 318). "The burden [i]s upon the officer to obtain consent, not on [the defendant] to affirmatively deny consent." Id. at 103, 578 S.E.2d at 58 (quoting Jean-Laurent, 34 Va. App. at 80, 538 S.E.2d at 319).

The record supports the trial court's factual findings of consent. When appellant was standing on the front porch and was arrested, he was wearing no shoes. He told the officers he needed to retrieve his shoes from inside the house. When Officer Johnson did not find the shoes inside the front door, appellant said the shoes were in his brother's room and that he could take

- 7 -

the officers to that room to retrieve the shoes. Appellant then led the officers to the brother's room where they found the shoes.

Consistent with the Fourth Amendment, an arresting "officer may permissibly accompany the arrestee into his residence to obtain clothing." United States v. Debuse, 289 F.3d 1072, 1074 (8th Cir. 2002) (arrestee asked for socks, shoes, keys, and wallet); cf. Washington v. Chrisman, 455 U.S. 1, 7 (1982) ("[I]t is not 'unreasonable' under the Fourth Amendment for a police officer, as a matter of routine, to monitor the movements of an arrested person, as his judgment dictates, following the arrest.").

However, it is clear that the consent was limited to the retrieval of appellant's shoes.

> Officers who have obtained an individual's consent to search must not exceed the scope of their permission. The test for the scope "whether it is objectively reasonable for the police to believe that the consent permitted them to search where they did" limits the scope to the "expressed object" of the search. Lawrence v. Commonwealth, 17 Va. App. 140, 145, 435 S.E.2d 591, 594 (1993) (citing Florida v. Jimeno, 500 U.S. 248, 251 (1991)), aff'd, 247 Va. 339, 443 S.E.2d 160 (1994).

Barkley v. Commonwealth, 39 Va. App. 682, 696, 576 S.E.2d 234, 241 (2003). See also Grinton v. Commonwealth, 14 Va. App. 846, 850, 419 S.E.2d 860, 862 (1992) ("The scope of a person's consent is determined by whether it is objectively reasonable for the police to believe that the consent permitted them to search where they did.").

We conclude that appellant consented to the officers entering the home for the limited purpose of retrieving the shoes. The scope of the consent did not reasonably extend to areas where the shoes were not located or past the time the shoes were recovered. We then must independently determine whether the officers' "sweep" of the house was constitutionally permissible.

<u>Protective Sweep</u>

Appellant contends the protective sweep violated his Fourth Amendment rights because the police did not provide an articulable basis to support a reasonable suspicion that another person was in the house who could pose a threat to the officers. The Commonwealth disagrees, relying on part of the trial court's finding that the police had information concerning the presence of a weapon in the house, "coupled with the possibility of others being present."

As we have recognized, "the standard for reviewing the protective sweep exception is one of 'reasonable suspicion.'" <u>Williams v. Commonwealth</u>, 49 Va. App. 439, 450, 642 S.E.2d 295, 300 (2007) (<i>en banc</i>) (quoting <u>Maryland v. Buie</u>, 494 U.S. 325, 327 (1990)). "A protective sweep is reasonable if 'reasonably articulable facts' exist to show that the area searched 'could harbor an individual posing a threat to those on the scene.'" <u>Id.</u> (quoting <u>United States v. Lawlor</u>, 406 F.3d 37, 41 (1st Cir. 2005)). <u>Buie</u>, the seminal case addressing protective sweeps, "h[e]ld that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." <u>Buie</u>, 494 U.S. at 334. In reaching its holding, the Supreme Court, in part, relied upon its analysis in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). It noted that <u>Terry</u> "authorized a limited patdown for weapons where a reasonably prudent officer would be warranted in the belief based on 'specific and articulable facts' and not on a mere 'inchoate and unparticularized suspicion or hunch that he is dealing with an armed and dangerous individual.'" <u>Buie</u>, 494 U.S. at 332 (quoting <u>Terry</u>, 392 U.S. at 21, 27).

"A court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion." <u>Mason v. Commonwealth</u>, 63 Va. App. 587, 597, 760 S.E.2d 831, 836 (2014) (quoting <u>United States v. Sokolow</u>, 490 U.S. 1, 10 (1989)). "'The officer, of course, must be able to articulate something more than an "inchoate and

unparticularized suspicion or hunch.'"'" Id. at 598, 760 S.E.2d at 836 (quoting Sokolow, 490 U.S. at 7).

> A reviewing court must consider the totality of the circumstances known to the officer at the time of the stop when determining whether the officer's suspicion was reasonable . . . . "Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity."

Id. at 598-99, 760 S.E.2d at 837 (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).

In Williams, we found the protective sweep was lawful based on the police having information indicating the presence of others inside the apartment, both from a neighbor and from the officer's personal observation. The police also had information that a loaded weapon was present. Williams, 49 Va. App. at 444-45, 642 S.E.2d at 297.

In Commonwealth v. Robertson, 275 Va. 559, 659 S.E.2d 321 (2008), there was no evidence that any of the officers had any belief or suspicion that anyone remained in the house after Robertson's arrest. The Supreme Court concluded the protective sweep exception was not applicable. Id. at 565, 659 S.E.2d at 325.

The Commonwealth argues Williams is similar to the instant case. However, the facts in Williams distinguish it. In Williams, the accused was heavily armed, but ultimately surrendered. The police had information from neighbors and personal observations indicating the presence of others in the apartment. Williams, 49 Va. App. at 444-45, 642 S.E.2d at 297.

Here, there was no evidence that anyone was present in the house. Both Johnson and appellant stated so. Johnson testified he saw no one nor heard anyone. "[T]he Commonwealth has the heavy burden of establishing an exception to the warrant requirement," Megel v. Commonwealth, 262 Va. 531, 534, 551 S.E.2d 638, 640 (2001), i.e, the Commonwealth must prove the police had a reasonable and articulable belief that someone was in the house that posed a danger to the officers. See Buie, 494 U.S. at 334.

Johnson expressly stated that, at the time the officers entered the house, he "didn't consider" conducting a protective sweep, and only after the limited purpose for the entry had been accomplished, i.e., retrieving the shoes, did the officers decide to perform a protective sweep. By that time, the officers were no longer acting within appellant's limited consent to enter the house for a specific purpose.

> "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251 (1991). "The scope of a search is generally defined by its expressed object." Id.

Brooks v. Commonwealth, 282 Va. 90, 95, 712 S.E.2d 464, 467 (2011). Johnson testified he was not under the impression he had been given consent to search at the time he swept the house. Likewise, Allison acknowledged he had not been told the officers had consent at the time the field test was performed. Immediately prior to the protective sweep, Benson had left the house to seek consent to search because appellant had advised him that appellant's mother owned the house. The Commonwealth does not argue on appeal that appellant consented to an expanded search of the house.

Johnson testified he decided to check the rooms off of the hallway based on the information related by Benson, but Johnson never articulated any specific factual basis for his concern for the officers' safety. When asked why he walked down the hallway, Johnson stated he wanted "[t]o make sure there was [sic] no people there to – being the nature of the call, we were there to arrest the individual, but I wasn't sure if there was [sic] other people there, and the possibility of there being firearms in the location, I didn't want our backs exposed to that hallway." His speculation was not supported by any evidence. Johnson conceded his "sweep" consisted of checking only the two bedrooms in which the contraband was recovered. While Johnson stated that the officers swept the living room, dining room, and kitchen when they

- 11 -

"walked through" them, nothing in the record indicates they checked them carefully for the presence of third parties. Johnson expressly admitted he failed to check one of the bedrooms and a bathroom off of the hallway, as well as the garage.

While the trial court found that the officers had information concerning the presence of a gun, "coupled with the possibility of others being present," the trial court concluded that, once inside, the officers were justified in ensuring the accuracy of appellant's statement that no one was in the house.

> A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that the Court reviews *de novo* on appeal. Bolden v. Commonwealth, 263 Va. 465, 470, 561 S.E.2d 701, 704 (2002). Specifically, "determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." Ornelas v. United States, 517 U.S. 690, 699 (1996). "In performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*).

Freeman v. Commonwealth, 65 Va. App. 407, 414-15, 778 S.E.2d 519, 523 (2015).

We find there was no evidence to support the trial court's finding and therefore are not bound by that determination.

Citing Williams, the Commonwealth further contends that the "validity of an entry for a protective sweep without a warrant depends on the reasonableness of the response, as perceived by the police." Williams, 49 Va. App. at 451, 642 S.E.2d at 300 (quoting People v. Cartwright, 563 N.W.2d 208, 213 (Mich. 1997)) (emphasis omitted). Nevertheless, the standard remains what a reasonably prudent officer would believe, a concept reinforced by Williams. Here, the officers did not hold any reasonable, articulable suspicion that an armed individual was in the house at the time they entered to retrieve appellant's shoes. As Johnson acknowledged, he "didn't consider" performing a protective sweep at the time the officers entered the house, and

the police were presented with no additional circumstances to change that perception after appellant retrieved his shoes.

Accordingly, we conclude the trial court erred in not granting the motion to suppress as to the items discovered during the protective sweep.

Search Warrant

Appellant contends that all items seized pursuant to the search warrant must be suppressed because the warrant was based on unlawful police conduct. Essentially, appellant argues the illegal "sweep" revealed a powdery substance on the scale which the officer, based on his training and experience, suspected was illegal drugs. Based on that observation, Detective Allison entered the premises to conduct a field test on the powdery substance which tested positive for cocaine. Based on that test, a search warrant was obtained. The affidavit for the search warrant, executed by Allison, recited that Officer Johnson, during a protective sweep observed a digital scale which was covered by what appeared to be cocaine residue and observed a semi-automatic firearm. Allison continued that he field tested the powdery substance which was positive for cocaine.

The search warrant resulted in the seizure of drugs, paraphernalia, a handgun, and a digital scale. These were the items appellant sought to suppress. When police violate a subject's Fourth Amendment rights, as was done here, any evidence seized as a result is "the fruit of the poisonous tree" and must be suppressed. See Gladden v. Commonwealth, 11 Va. App. 595, 600, 400 S.E.2d 791, 794 (1991) (evidence must be suppressed as long as it is "obtained either during or as a direct result" of the illegal search or seizure). See also Wong Sun v. United States, 371 U.S. 471, 485 (1963) (cited in Fitchett v. Commonwealth, 56 Va. App. 741, 747, 697 S.E.2d 28, 31 (2010)). We then must decide whether the search warrant "exploited" the illegal activity by

- 13 -

the police.  See id. at 488.  In other words, was obtaining the search warrant based on probable cause sufficiently attenuated from the illegal "protective sweep"?

The Commonwealth contends that the "sweep" was lawful, thus revealing the powdery substance on the scale.  At that point, the Commonwealth asserts, the police had probable cause to seize the item and obtain a search warrant.  Thus, according to the Commonwealth, Allison lawfully conducted a field test which revealed cocaine and gave rise to probable cause for the search warrant.  The Commonwealth does not address the "fruit of the poisonous tree" doctrine because it claims there is no "poisonous tree."

Suppression of evidence is warranted "where the illegality engaged in by law enforcement results in the discovery of evidence that naturally flows from that illegality." Echavarry v. Commonwealth, 60 Va. App. 177, 185, 725 S.E.2d 151, 155 (2012).  Here, there was an unbroken series of events from the "sweep," to Allison's field test, to obtaining the search warrant.  Accordingly, there was no attenuation, and the search warrant was an exploitation of the illegal sweep.  See Wong Sun, 371 U.S. at 488.

Thus, we conclude the trial court erred in not granting the motion to suppress.

Inevitable Discovery

The Commonwealth contends that, even if the officer's conduct violated the Fourth Amendment, the evidence should not be suppressed because it would have been inevitably discovered.  It argues that, based on the victim's statement to the police at the hospital – that marijuana, cocaine, and a weapon could be found at that specific address – the police had probable cause to obtain a search warrant prior to entering the premises.

Appellant responds that the inevitable discovery doctrine does not apply when a defendant has entered a conditional guilty plea, and has successfully attacked a trial court's suppression ruling on appeal.  We agree with appellant.

An exception to the exclusionary rule, "'the doctrine of inevitable discovery' . . . provides that evidence obtained by unlawful means is nonetheless admissible 'if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.'" Baker v. Commonwealth, 57 Va. App. 181, 195, 700 S.E.2d 160, 166-67 (2010) (quoting Nix v. Williams, 467 U.S. 431, 444 (1984)) (citation and some quotation marks omitted). Because this case involves a conditional guilty plea, Code § 19.2-254 "mandates that we remand the case to the trial court to permit the possible withdrawal of the guilty plea if an appellant prevails on appeal without regard to any inevitable discovery or harmless error analysis." Id. at 195, 700 S.E.2d at 167.

In Hasan v. Commonwealth, 276 Va. 674, 667 S.E.2d 568 (2008), the appellant sought to suppress un-Mirandized statements that led to the discovery of the weapon. The Supreme Court addressed whether, after deciding that the trial court had erroneously denied Hasan's suppression motion, it could nevertheless avoid reversal by applying the inevitable discovery doctrine. The Supreme Court concluded it could not, and offered the following rationale:

> Th[is] argument[], which [is] in the nature of a harmless error analysis, [is] inapplicable to this case. Even if the Commonwealth is correct about the inevitable discovery of the weapon . . . , Hasan entered a conditional guilty plea pursuant to Code § 19.2-254, which provides in part that "[i]f the defendant prevails on appeal, he *shall* be allowed to withdraw his plea." Hasan has prevailed on appeal regarding suppression of the statement at issue in this case. He is entitled by statute to withdraw his plea. Hasan must be given the opportunity to reassess the admissible evidence that may be used against him and, if the Commonwealth wishes to continue its prosecution, demand a trial if he so desires.

Id. at 681, 667 S.E.2d at 572 (emphasis added).

In Baker, appellant sought to suppress the seizure of drugs because of an illegal pat down. This Court likewise declined to apply the inevitable discovery doctrine on the basis that Baker had successfully attacked the trial court's suppression ruling and was therefore "entitled

- 15 -

by statute to withdraw his plea." Baker, 57 Va. App. at 196, 700 S.E.2d at 167.  Therefore, we rejected the Commonwealth's argument that the inevitable discovery doctrine was applicable. Id.

As in Hasan and Baker, appellant has prevailed on the merits of his appeal regarding the trial court's suppression ruling after entering a conditional guilty plea below.  Accordingly, we conclude that he must be given the opportunity to withdraw his plea on remand and that the inevitable discovery doctrine does not apply.

Conclusion

We find that the initial entry into the house and the search for appellant's shoes were with appellant's consent.  However, that consent lapsed upon the retrieval of the shoes, and the protective sweep was not supported by articulable facts which would warrant a reasonably prudent officer in believing that the house harbored an individual posing a danger to the police. The unlawful sweep revealed a firearm and suspected cocaine which in turn caused a detective to field test the powder, testing positive for cocaine.  Based on these events, a search warrant was issued and the search revealed drugs, paraphernalia, and a weapon, which were all illegally seized.  The trial court erred in not suppressing those items seized under the authority of the search warrant.

We reverse the convictions and remand for further proceedings if the Commonwealth be so inclined.

Reversed and remanded.