PRESENT: Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and
Kinser, JJ., and Stephenson, S.J.

MICHAEL L. MEGEL

OPINION BY
v.  Record No. 002816    SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
September 14, 2001
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we determine whether an accused's home may
be subjected to a warrantless search by police while the accused
is serving a sentence, pursuant to Code § 53.1-131.2(A), in the
so-called Electronic Incarceration Program.

I

Michael L. Megel was indicted in the Circuit Court of
Fairfax County for the possession of firearms as a convicted
felon, in violation of Code § 18.2-308.2.  The trial court
denied Megel's motion to suppress evidence of firearms found in
a warrantless search of his home.  Thereafter, a jury convicted
Megel of the charged offense and fixed his punishment at 12
months in jail, and the trial court sentenced him in accordance
with the jury's verdict.

Megel appealed the conviction to the Court of Appeals, and
a panel of the Court, with one judge dissenting, affirmed the
judgment.  Megel v. Commonwealth, 31 Va. App. 414, 524 S.E.2d
139 (2000).  On rehearing en banc, the full Court of Appeals
also affirmed the conviction for the reasons stated in the panel

opinion.  Megel v. Commonwealth, 33 Va. App. 648, 536 S.E.2d 451 (2000).  We awarded Megel this appeal.

## II

On October 22, 1996, the General District Court of Fairfax County convicted Megel of unlawful entry.  The court sentenced Megel to 12 months in jail, but suspended six months of the sentence upon the condition that he remain of good behavior. The court further ordered Megel to serve the six-month sentence in his own home as a participant in the Fairfax County Sheriff's Electronic Incarceration Program (the Program).

Megel entered the Program on February 21, 1997.  At that time, he executed a written agreement to abide by certain rules as a condition of his participation in the Program.  These rules required Megel, among other things, to submit to random urine tests, continuously wear an electronic monitoring device on his ankle, refrain from possessing weapons or intoxicating substances, and subject himself to random, unannounced home visits by the sheriff.

On July 22, 1997, a deputy sheriff and two county police detectives, acting upon an anonymous tip that Megel had narcotics in his home, went to Megel's apartment.  The officers did not possess a search warrant.

Megel's girlfriend, who lived with Megel and their infant child, admitted the officers into the apartment.  The deputy

2

sheriff asked Megel if the officers could "look around" the apartment, and Megel responded, "[Y]eah[,] go ahead." The officers then made a quick inspection of the apartment for their own safety and determined that no one was hiding in the apartment and no weapons appeared to be readily available. The deputy then told Megel why they were present and asked him if they could search the apartment for drugs. Megel said, "[G]o ahead. You're not going to find anything. You're welcome to look around."

While conducting a search of the apartment, the officers found two handguns in the bottom of a dresser drawer in a bedroom. The drawer also contained men's underwear and socks.

### III

The Fourth Amendment to the Federal Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Therefore, warrantless searches are per se unreasonable, subject to a few specifically established and well-delineated exceptions, Thompson v. Louisiana, 469 U.S. 17, 19-20 (1984), and the Commonwealth has the heavy burden of establishing an exception to the warrant requirement. Welsh v. Wisconsin, 466 U.S. 740, 749-50 (1984).

Whether a person has the right to claim the protection of the Fourth Amendment depends upon whether the person has a

legitimate expectation of privacy in the place searched.

Minnesota v. Carter, 525 U.S. 83, 88 (1998); Rakas v. Illinois, 439 U.S. 128, 143 (1978).  This zone of privacy is most clearly defined when bounded by "the unambiguous physical dimensions of an individual's home."  Payton v. New York, 445 U.S. 573, 589 (1980).

A

The Commonwealth contends that the search of Megel's home was reasonable because "as a prisoner he had no reasonable expectation of privacy there."  The Court of Appeals agreed, concluding that "participation in the [Program] is more analogous to a person serving time in a jail or prison" and that Megel's home "is the functional equivalent of a jail or prison cell."  Megel, 31 Va. App. at 422, 524 S.E.2d at 143.  In so concluding, the Court of Appeals relied upon Hudson v. Palmer, 468 U.S. 517 (1984).

In Hudson, the Supreme Court considered whether an inmate in a penal institution has a right to privacy in his prison cell, thus affording him Fourth Amendment protection against unreasonable searches.  The Court stated the following:

> [W]hile persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant rights. . . .  These constraints on inmates, and in some cases the complete withdrawal of certain rights, are "justified by the considerations underlying our penal system." . . .

4

The curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of "institutional needs and objectives" of prison facilities, . . . chief among which is internal security . . . . Of course, these restrictions or retractions also serve, incidentally, as reminders that, under our system of justice, deterrence and retribution are factors in addition to correction.

468 U.S. at 524 (citations omitted). The Court then held that

society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

Id. at 526.

We reject the Court of Appeals' conclusion that Megel's home is the functional equivalent of a jail or prison cell. Although the Program restricts Megel's freedom, he is not a prisoner in the traditional sense. Code § 53.1-131.2(A), which authorizes the Program, provides, in pertinent part, that:

Any court having jurisdiction for the trial of a person charged with a criminal offense . . . may, if the defendant is convicted and sentenced to confinement in a state or local correctional facility, and if it appears to the court that such an offender is a suitable candidate . . . , assign the offender to a home/electronic incarceration program as a condition of probation.

(Emphasis added.) Thus, Megel was assigned to the Program "as a condition of probation;" he was not confined with other inmates

5

in a prison where the needs and objectives of the facility must be considered.

B

We also reject the Commonwealth's contention that, pursuant to the terms of the agreement Megel executed, he waived his Fourth Amendment protection. Although the agreement gave the sheriff the right to make random visits to Megel's home, there is no provision in the agreement that gives the sheriff the right to fully search Megel's home.

The present case is altogether different from Anderson v. Commonwealth, 256 Va. 580, 507 S.E.2d 339 (1998), upon which the Commonwealth relies. In Anderson, the defendant executed a written plea agreement whereby he voluntarily and knowingly, with the advice of counsel, agreed to waive his Fourth Amendment rights. Id. at 582, 507 S.E.2d at 340. Additionally, the sentencing order stated that the defendant, by waiving his Fourth Amendment rights, "shall submit his person, place of residence, and property to search or seizure at any time . . . with or without a warrant." Id. In the present case, no reasonable interpretation of the agreement gives rise to a waiver by Megel of his Fourth Amendment rights.

In exercising the right to visit Megel's home, the officers reasonably could "look around" Megel's apartment to ensure their safety. Such an inspection, however, did not justify a full

6

search of the premises, as was made clear in Maryland v. Buie, 494 U.S. 325, 335-36 (1990), where the Supreme Court stated the following:

> We should emphasize that . . . a protective sweep, aimed at protecting . . . officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger.

(Footnote omitted.)

IV

A

The Commonwealth further contends that, even if Megel was entitled to the protection of the Fourth Amendment, the record supports the trial court's alternative holding that Megel voluntarily consented to the search. The Court of Appeals, however, declined to address this issue in light of its holding that Megel had no reasonable expectation of privacy. Megel, 31 Va. App. at 424, 524 S.E.2d at 144. Although we question whether Megel raised this issue before the Court of Appeals, we will leave that determination to the Court of Appeals.

B

In sum, we hold that the Court of Appeals erred in ruling that, by Megel's entering into the Program, his home became "the functional equivalent of a jail or prison cell," resulting in the loss of his Fourth Amendment protection against unreasonable

searches and seizures.  We further hold that Megel did not waive his Fourth Amendment rights by executing the agreement to enter the Program.

Accordingly, the judgment of the Court of Appeals will be reversed and, because the Court declined to consider the issue of consent and the issue is not before us as an assignment of error, the case will be remanded to the Court of Appeals for consideration thereof.

<u>Reversed and remanded</u>.