COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Beales, Causey and Senior Judge Petty
Argued by videoconference


JOEL AARON BURRELL
                                                          MEMORANDUM OPINION* BY
v.          Record No. 1318-22-1                     JUDGE RANDOLPH A. BEALES
                                                              NOVEMBER 12, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Michael A. Gaten, Judge

Joel Aaron Burrell, *pro se*.

Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the Circuit Court of the City of Hampton convicted Joel Burrell of

second-degree murder and use of a firearm in the commission of a felony.  On appeal, Burrell

challenges (1) the sufficiency of the evidence to support his convictions; (2) the circuit court's

decision to declare a mistrial because of an incoming hurricane; (3) the circuit court's decision to

deny Burrell's motion to dismiss for an alleged speedy trial violation; (4) the circuit court's

decision to deny Burrell's motion to suppress the evidence obtained from the search of one of his

cell phones; (5) the circuit court's decision to deny Burrell's motion to dismiss the indictments

for an alleged fraud perpetrated upon the court; (6) the circuit court's decision to give a jury

instruction for the charge of use of a firearm in the commission of a felony; and (7) the circuit

court's decision to admit security system records under the business records exception to

hearsay.

---

\* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

# I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, [as] the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

## A. Pre-trial Motions to Dismiss

Joel Burrell was charged with second-degree murder and use of a firearm in the commission of a felony for the killing of his father, Donald Burrell. Joel Burrell's jury trial initially began on Monday, September 10, 2018. On the second day of trial, September 11, 2018, the attorney for the Commonwealth moved for a mistrial because a hurricane was approaching Hampton. The circuit court judge stated that "the Governor issued a mandatory evacuation for people who live and reside in low-lying areas" in Hampton, and the judge also considered that many of the jurors lived in the mandatory evacuation areas. Later that same day, the circuit court judge informed both counsel that "the Hampton court system, including the Circuit Court, will be closed as of noon tomorrow [September 12] for the remainder of the week." The attorney for the Commonwealth explained that he had 14 witnesses left who had not yet testified – many of whom had flown in from out of town. Counsel for Burrell then also stated, "[Y]our Honor decides to declare a mistrial because of the weather, then what we would be asking, Judge, is for certainly, um, this case be -- you -- you get this case again." The circuit court then granted the motion for a mistrial, and the judge explained, "[T]here's been an act of God, a state emergency, mandatory orders to evacuate, all have been alluded to on the record."

On November 12, 2019, after Burrell's second jury trial ended in a mistrial, Burrell filed a motion to dismiss where he argued that "on September 11th, 2018 a mistrial was sua sponte declared by the tribunal over Joel Aaron Burrell objection for lack of manifest necessity existing to declare a mistrial for an Act of God." The circuit court denied Burrell's motion to dismiss.

Burrell also moved to dismiss the indictments by arguing that his statutory speedy trial rights had been violated. Burrell argued that he had remained in custody for more than five months since the district court had found on November 7, 2017, that his charges were supported by probable cause. The circuit court's orders reflect that Burrell's trial was originally set to begin on January 4, 2018, but the trial was continued because of inclement weather. Burrell then had a new attorney appointed, and the trial was set for February 21, 2018. However, the February 21, 2018 trial date was continued because counsel for Burrell did not appear in court that day. On March 19, 2018, Burrell moved for a continuance until May 2, 2018. A May 2, 2018 order then shows that the trial was set for September 10, 2018, at the May 2, 2018 status hearing, where counsel for Burrell was not present. An August 13, 2018 order also shows that Burrell moved for a continuance until September 10, 2018. Burrell's jury trial then did actually start on Monday, September 10, 2018.

The circuit court held a hearing on Burrell's speedy trial motion. The circuit court judge stated that the "defense asked for a continuation in March of 2018, and that was eventually continued for a jury trial in September of 2018." The circuit court then held, "[T]he Court finds all that time was tolled because defense agreed, acquiesced, and it was their motion to continue the case in the first place." The circuit court then denied Burrell's motion to dismiss based on the speedy trial objection, and the case subsequently went to trial.

### B. The Evidence at Trial

Hampton Firefighter Aaron Brown testified at trial that on October 9, 2016, he responded to a 911 call placed by Joel Burrell at his father's home in Hampton. Brown testified that when he

entered the home, he saw Joel Burrell sitting on the couch in the living room. Burrell's father, Donald Burrell, was lying face down on the bedroom floor without a pulse and with blood underneath his body. Brown testified that he believed that Donald Burrell had been dead for "at least over 24 hours." Hampton police officers then discovered shell casings from a firearm around his body, and they saw that he suffered from multiple gunshot wounds.[1]

Hampton Police Sergeant Quincina Neal spoke with Joel Burrell at his father's home that same day. Sergeant Neal testified that Burrell told her that the last time that he had seen his father alive was on Tuesday, October 4, 2016. Burrell also told Sergeant Neal that he stayed at his friend Keenan Johnson's home in Newport News from October 4, 2016, until October 9, 2016. Burrell then gave Sergeant Neal one of his cell phones and a key to Donald Burrell's home. Sergeant Neal also testified, "Joel [Burrell] had informed me during my contact with him that when he went to the residence, the door was ajar." Sergeant Neal then stated that she investigated around Donald Burrell's home, and she testified that she did not see any signs of forced entry into the home.

Burrell also spoke with Hampton Police Detective Randy Mayer while still at the home. Detective Mayer explained that he invited Burrell to come speak with him at the police station, and Burrell asked to ride with Mayer to the station. Detective Mayer then obtained Burrell's flip phone (a different phone than the one he gave to Sergeant Neal) while they were going to the police station. While at the police station, Detective Mayer spoke with Burrell about where he had been in the days leading up to his father's death. Detective Mayer testified that Burrell told him that he had stayed with his friend Keenan Johnson in Newport News from October 4, 2016, until October 9, 2016 – the day that Donald Burrell's body was discovered. When Detective Mayer began asking

---

[1] Dr. Wendy Gunther, an expert in forensic pathology who conducted Donald Burrell's autopsy, testified that he died from 13 to 15 gunshot wounds.

Burrell questions about his time at Johnson's home, Detective Mayer testified that Burrell stated, "I never left the city of Newport News."

Keenan Johnson, however, testified that Burrell contacted him on Friday, October 7, 2016, and told him that "he [Burrell] was having some problems with a female friend, and she had kicked him out, and he needed a place to stay." Johnson stated that Burrell arrived at his home in Newport News sometime between 11:00 a.m. and 1:00 p.m. on Friday, October 7, 2016. Burrell stayed at Johnson's home until Sunday, October 9, with Keenan and his wife, Paris Johnson. Paris Johnson also testified that Burrell only stayed at their home from Friday, October 7 until Sunday, October 9, 2016.

Deon Morrow, who described his job as "senior court analyst with Verizon," testified about Burrell's cell phone records. Morrow explained, "It won't tell you the location of the device. It will tell you the location of the cellular tower. You can then, if you wish, extrapolate from that information to determine the approximate location of the device at the time the call took place." Newport News Detective Trevor Buchanan, who testified at trial as an expert in call detail records and geo-location analysis, analyzed Burrell's cell phone records for the period of October 6 through October 9, 2016. Detective Buchanan stated that he used Burrell's phone data from when he called 911 on October 9 at his father's home as "a control sample." Buchanan testified, "We have our control sample of October 9th, and, then, we compare that to our date in question or time frame in question, October 6th into the 7th, and the location information for both of these dates are very similar and pretty consistent with each other."

Burrell's phone records showed that the same cell phone that was used to call 911 to report his father's death on October 9 also called a taxicab service on October 7, 2016, at 8:48 a.m. The taxi driver who responded to that call testified that he picked up a man in Hampton, and he then

dropped that man off at a Hardee's restaurant in Hampton. Burrell was then seen on security camera footage inside the Hardee's.

The Commonwealth also had witnesses testify about Donald Burrell's potential time of death. Donald Burrell's daughter, Marketta Burrell, testified that the last time she spoke to her father was 9:05 p.m. on Thursday, October 6, 2016. In addition, Dr. Gunther, the medical examiner who examined Donald Burrell's body after his murder, testified that as of Sunday, October 9, 2016, "It's unlikely he's been dead less than 24 hours." Dr. Gunther went on to explain, "It kind of looks like a couple days of decomp."

Donald Miles, the national account supervisor at ADT, testified about the activity of Donald Burrell's security system in the days surrounding his death. Miles explained that ADT collects security system data as part of its regular course of business. Miles then testified about a list of security notifications that recorded when the doors at Donald Burrell's home were opened or closed. In addition, the data list showed that Donald Burrell typed in a code to deactivate an alarm in August 2016. After Miles explained how ADT records this security system data, the Commonwealth moved to enter the list of Donald Burrell's home security system data into evidence as Commonwealth's Exhibit 8. The circuit court judge entered Exhibit 8 into evidence over Burrell's objection, and the judge stated, "I don't necessarily see anything in terms of the preparation -- the lack of trustworthiness in the preparation of the documents, and I think that becomes more of a relevance or weight issue. So I'm going to overrule any objection."

The list of data in Exhibit 8 shows that a door to Donald Burrell's home was opened and closed throughout the evening of October 6 and the early morning of October 7, 2016. Between 1:49 a.m. and 2:40 a.m. on October 7, a door to the home opened or closed six separate times. After 2:40 a.m. on Friday, October 7, 2016, the doors to Donald Burrell's home did not open or close again until 12:28 p.m. on Sunday, October 9, 2016.

## C. Motion to Suppress

Burrell moved to suppress the evidence obtained from his flip phone that he gave to Detective Mayer on October 9, 2016. Detective Mayer testified at the hearing on the motion to suppress that while he and Burrell were walking to Mayer's car to go talk at the police station, Burrell answered a call on his flip phone. Detective Mayer testified, "[W]hen he [Burrell] hung up, I said, 'I'm sorry, I thought that you had already given your phone to Detective Neal.' And he [Burrell] said, 'That was my other phone.'" Detective Mayer then stated, "Do you mind to leave that here also? This phone also? We're going to be doing search warrants. You're a part of the crime scene." Mayer then stated, "He [Burrell] just handed me the phone." Burrell testified, "He [Detective Mayer] told me I had to give him the phone, since I've already consented to a phone ping with Detective Quincina Neal." After hearing the testimony at the suppression hearing, the circuit court judge stated, "I find that Detective Mayer's testimony has been credible through this Court." The circuit court judge then held, "So I find that it was consensual, and the phone is admissible and, obviously, foundational requirements any evidence derived thereof should be admissible as well."

## D. Jury Instruction 13

After the evidence was presented at trial, the parties presented their proposed jury instructions to the circuit court. The Commonwealth offered Instruction 13, which states:

> The defendant is charged with the crime of using a firearm while committing Murder. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1) That the defendant used a firearm; and
>
> (2) That the use was while committing or attempting to commit Murder.

Burrell objected to Instruction 13, and he argued that "the circumstantial evidence that has been presented in the case doesn't support the use of a firearm instruction." The circuit court overruled the objection, and the circuit court judge explained that "we've got a person shot 13, 15

times with shell casings and ballistics to support that there was a projectile expelled from a firearm." The circuit court sent the case to the jury, and the jury found Burrell guilty of second-degree murder and use of a firearm in the commission of a felony.

### E. Post-trial Motion to Dismiss

At his sentencing hearing, Burrell moved to dismiss his convictions for an alleged fraud on the court. Burrell argued, "This whole trial was initiated based upon the allegation of GPS coordinates not cell phone data." Burrell also stated,

> GPS coordinates is precise versus cell phone tower data which is a triangulation of a specific area and a wider range within a certain point and in the court this was presented to the Judge in which the Judge accepted this as being GPS data which was a false misrepresentation and it was fraud upon the court.

Burrell went on to argue that the prosecutor at the preliminary hearing was only able to obtain the indictments in this case because the prosecutor told the judge that the police relied on GPS coordinates from Burrell's cell phone – not cell tower data. The circuit court denied Burrell's motion and stated, "I don't remember GPS coordinates being really the issue, like, we know he was right here, right there." Burrell appeals to this Court.

### II. ANALYSIS

### A. Decision to Declare a Mistrial

A circuit court has the authority to declare a mistrial when it determines there exists a manifest necessity to do so. *See Prieto v. Commonwealth*, 278 Va. 366, 389 (2009) (citing Code § 8.01-361). On appeal to this Court, Burrell argues that the circuit court erred when it granted the Commonwealth's motion for a mistrial on September 11, 2018, because the incoming hurricane did not actually create a manifest necessity to declare a mistrial. However, Burrell did not make this specific argument to the circuit court on September 11, 2018. Instead, counsel for Burrell only requested that "you [the circuit court judge] get this case again." Burrell did not

- 8 -

object to the circuit court's decision until over a year later when he filed his motion to dismiss on November 12, 2019. This Court has often stated that "a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal." *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (*en banc*); *see also Commonwealth v. Minitee*, No. 210031 (Va. Dec. 16, 2021) (order) (The Supreme Court has held, "To preserve the issue of manifest necessity, the contemporaneous objection rule required Minitee to object not only to the mistrial, but to the precise point that a manifest necessity did not exist to declare the mistrial."). Consequently, Burrell has waived his argument challenging the circuit court's decision to declare a mistrial on September 11, 2018, because Burrell did not timely object to the circuit court's decision that the incoming hurricane created a manifest necessity to declare a mistrial.

### B. Speedy Trial

Burrell argues, "The trial court erred in denying Burrell's motion to dismiss the indictments for failure to afford Burrell his statutory and constitutional right to a speedy trial." "On appeal, a statutory speedy trial challenge presents a mixed question of law and fact. The Court reviews legal questions de novo, while giving deference to the trial court's factual findings." *Young v. Commonwealth*, 297 Va. 443, 450 (2019).

Code § 19.2-243 provides that a defendant who is charged with a felony "shall be forever discharged from prosecution for such offense if no trial is commenced in the circuit court within five months from the date such probable cause was found by the district court." "That five-month requirement equates 'to 152 and a fraction days.'" *Osman v. Commonwealth*, 76 Va. App. 613, 657 (2023) (quoting *Ballance v. Commonwealth*, 21 Va. App. 1, 6 (1995)). Code § 19.2-243 also provides:

> The provisions of this section shall not apply to such period of time as the failure to try the accused was caused: . . . 4. By continuance

- 9 -

granted on the motion of the accused or his counsel, or by concurrence of the accused or his counsel in such a motion by the attorney for the Commonwealth, or by the failure of the accused or his counsel to make a timely objection to such a motion by the attorney for the Commonwealth . . . 7. By a natural disaster, civil disorder, or act of God.

In this case, the district court found on November 7, 2017, that Burrell's charges were supported by probable cause, and the trial was originally scheduled to take place on January 4, 2018. These 58 days between November 7, 2017, and January 4, 2018, count against the Commonwealth for speedy trial purposes. However, given that the original trial date had to be continued due to inclement weather, the time between January 4, 2018, and February 21, 2018 – the new trial date – was tolled under the statute because an "act of God" prevented the case from going to trial. Code § 19.2-243(7). While the trial was scheduled to begin on February 21, 2018, counsel for Burrell did not appear in court, and the circuit court was forced to continue the matter to a later date. Consequently, counsel for Burrell's failure to appear in court on February 21, 2018, tolled the time that it took the circuit court to schedule another hearing. *See* Code § 19.2-243(4); *Jefferson v. Commonwealth*, 33 Va. App. 230, 237 (2000) ("Defense counsel's failure to appear required a continuance as effectively as though defense counsel had moved for a continuance."). On March 19, 2018, Burrell moved for a continuance until May 2, 2018, and, therefore, that time period was also tolled under Code § 19.2-243(4).

On May 2, 2018, the attorney for the Commonwealth appeared at a status hearing in the circuit court to set the trial date. Counsel for Burrell did not appear at this status hearing, and the record does not indicate that counsel for Burrell ever objected to the setting of the September 10, 2018 trial date. Indeed, an August 13, 2018 order shows that counsel for Burrell filed a motion to continue the matter until September 10, 2018. Therefore, given that the record indicates that Burrell either moved for a continuance to set the September 10, 2018 trial date or that Burrell did not object to the setting of the September 10 trial date (and counsel for Burrell also was not even

- 10 -

present at the May 2, 2018 status hearing), the time between May 2, 2018, and September 10, 2018, must be tolled for speedy trial purposes. *See* Code § 19.2-243(4). Burrell's trial then began on September 10, 2018.

In short, the record indicates that only 58 of the requisite 152 days actually count toward the speedy trial deadline. Consequently, the circuit court did not err when it denied Burrell's motion to dismiss for an alleged statutory speedy trial violation. In addition, Burrell has waived any challenge to an alleged violation of his constitutional speedy trial rights as he did not make any argument based on constitutional speedy trial to the circuit court below or to this Court on appeal. *See* Rule 5A:18. Therefore, this Court cannot reach any error assigned by Burrell alleging a constitutional speedy trial violation.

### C. Motion to Suppress

Burrell also argues, "The trial court erred in denying Burrell's motion to suppress where the police conducted an illegal warrantless search of Burrell's phone without Burrell's consent in violation of Burrell's rights under the Fourth Amendment." The Supreme Court has often stated, "The defendant has the burden to show that, when viewing the evidence in the light most favorable to the Commonwealth, the trial court's denial of the motion to suppress was reversible error." *Sidney v. Commonwealth*, 280 Va. 517, 522 (2010). "We review de novo the trial court's application of the law to the particular facts of the case." *Branham v. Commonwealth*, 283 Va. 273, 279 (2012). However, this Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (*en banc*) (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

"[W]arrantless searches are *per se* unreasonable, subject to a few specifically established and well-delineated exceptions." *Megel v. Commonwealth*, 262 Va. 531, 534 (2001). This Court has consistently held, "A consensual search is one of those well-established exceptions to the Fourth Amendment's warrant requirement." *Lee v. Commonwealth*, 80 Va. App. 694, 702 (2024). "Both the presence of consent to search and any related limitations are factual issues for the trial court to resolve after consideration of the attendant circumstances." *Bynum v. Commonwealth*, 23 Va. App. 412, 418 (1996).

Here, the circuit court found that Burrell consensually gave his cell phone to Detective Mayer. The circuit court judge also found that Detective Mayer's testimony was credible when Detective Mayer explained that he asked Burrell, "Do you mind to leave that here also? This phone also?" and then stated that "[h]e [Burrell] just handed me the phone." The record supports the circuit court's finding of fact that Burrell consented to the search of his cell phone when he handed over the phone to Detective Mayer. In addition, the circuit court expressly rejected Burrell's testimony about his encounter with Detective Mayer. Consequently, given Detective Mayer's credible testimony, the circuit court was not plainly wrong or without evidence when it found that Burrell consented to the search of his cell phone. Therefore, the circuit court did not err when it denied Burrell's motion to suppress the evidence obtained from his cell phone because Burrell consented to the search.

## D. Post-trial Motion Alleging Fraud on the Court

Burrell then argues, "The trial court erred in denying Burrell's motion to dismiss the indictments for fraud perpetrated upon the court in violation of Va. Code § 8.01-428(D)." Specifically, Burrell contends in his opening brief that Detective Mayer falsely stated in a criminal complaint that "Verizon wireless emailed the cell logs and GPS coordinates of Joel Burrell's phone," but that "Verizon didn't provide any GPS data which Buchanan testified 'This

is not GPS data.'" Burrell also argues that the attorney for the Commonwealth argued during trial and during the preliminary hearing that "[t]his is the GPS data."

When reviewing the circuit court's rejection of a claim of fraud, this Court has held that we "must affirm the trial court's judgment unless it is plainly wrong or without evidence to support it." *Jennings v. Jennings*, 26 Va. App. 530, 534 (1998). "A party alleging fraud must prove by clear and convincing evidence (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to him." *Thompson v. Bacon*, 245 Va. 107, 111 (1993). The Supreme Court has stated, "Fraud cannot be presumed. It must be proved by clear and satisfactory evidence." *Redwood v. Rogers*, 105 Va. 155, 158 (1906).

In this case, the circuit court expressly rejected Burrell's argument that a fraud had been perpetuated on the court when the judge explained, "I don't remember GPS coordinates being really the issue." The circuit court's ruling shows that Burrell failed to prove by clear and convincing evidence any "reliance by the party misled" (i.e. the judge or the jury) of an allegedly fraudulent statement made by either Detective Mayer or the attorney for the Commonwealth during the trial as the circuit court judge did not even remember the "GPS coordinates being really the issue" in this case. *Thompson*, 245 Va. at 111.

Furthermore, Burrell has also failed to show that any person in this case "intentionally and knowingly" made a "false representation" "with the intent to mislead." *Id.* While Deon Morrow explained through his testimony that the Verizon cell phone data "won't tell you the location of the device. It will tell you the location of the cellular tower," he went on to explain that "[y]ou can then, if you wish, extrapolate from that information to determine the approximate location of the device at the time the call took place." Consequently, the record does not show by clear and convincing evidence that either Detective Mayer or the attorney for the Commonwealth made any

- 13 -

false statements about the cell phone data when they both indicated that they had used data that showed the location of Burrell's cell phone during his father's murder. As Morrow explained in his testimony, cell phone tower data can still be used to locate where a cell phone traveled during a given time. Indeed, the record actually shows that the attorney for the Commonwealth made this limited point in his closing arguments when he stated, "This is the GPS data. *This isn't precise*. We can't put you in a house, but we can put you in a neighborhood." (Emphasis added). Consequently, Burrell has failed to show by clear and convincing evidence that either Detective Mayer or the attorney for the Commonwealth made a false statement in this case.

In short, the record does not show that Detective Mayer or the attorney for the Commonwealth knowingly and intentionally made a false representation in this case – or that any allegedly fraudulent statement was relied on by either the judge or the jury. Therefore, given that Burrell has failed to carry the very high burden of proving by clear and convincing evidence that a fraud was perpetrated on the court, the circuit court did not err when it denied Burrell's motion to set aside the jury's verdict.

## E. Admission of the Security System Data

Burrell also argues, "The trial court erred in overruling Burrell's objection to the admission of the Protection One ADT records where the requirements for admission as a hearsay exception as records of irregularly conducted activity under rule 2:803(6) had not been met." "[W]e review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (alteration in original) (quoting *Avent v. Commonwealth*, 279 Va. 175, 197 (2010)).

The circuit court admitted Exhibit 8, a data list of Donald Burrell's home security system notifications, into evidence under the business records exception to hearsay. A business record is properly admitted into evidence under Virginia Rule of Evidence 2:803(6) when:

> (A) the record was made at or near the time of the acts, events, calculations, or conditions by—or from information transmitted by—someone with knowledge;
> (B) the record was made and kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making and keeping the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 2:902(6) or with a statute permitting certification; and
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Here, Donald Miles, a national account supervisor with ADT, testified that Donald Burrell's ADT door sensor recorded when the door opened or closed at his home and that ADT made and kept these recordings as part of its regular course of business – as ADT did for other customers of the business. In addition, the circuit court expressly found that there is no indication of a lack of trustworthiness in the information provided in the security system event history. As Miles explained in his testimony, the account was linked to Donald Burrell at his home address, and the data set from Exhibit 8 showed that Donald Burrell typed in a code to deactivate an alarm in August 2016. The circuit court explained that any concerns about the trustworthiness of the ADT security system went more to the weight of the evidence, and was not an issue about the exhibit's admissibility. Consequently, given that ADT account supervisor Donald Miles testified as a custodian of the security system's records that are regularly recorded as part of its ordinary business and given that the circuit court found that the system's data was trustworthy, the circuit court did not abuse its discretion by admitting Exhibit 8 into evidence as a business record.

F.  Sufficiency of the Evidence and Jury Instruction

Burrell argues that the evidence was insufficient to support his convictions of second-degree murder and use of a firearm in the commission of a felony.  "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is "plainly wrong or without evidence to support it."'"  *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)).  "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Pijor*, 294 Va. at 512).  "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Williams v. Commonwealth*, 278 Va. 190, 193 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  The Supreme Court has stated, "In applying this standard of review, we eschew the divide-and-conquer approach, which examines each incriminating fact in isolation, finds it singularly insufficient, and then concludes that the sum of these facts can never be sufficient.  Instead, in an appellate sufficiency review, the evidence is 'considered as a whole.'"  *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)).  "When conducting a sufficiency review on appeal, we do not 'distinguish between direct and circumstantial evidence' because the factfinder 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'"  *Id.* at 98 (quoting *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017)).

Here, the evidence supported the finding that Donald Burrell was shot 13 to 15 times between 9:05 p.m. Thursday, October 6, 2016, and 2:40 a.m. Friday, October 7, 2016.  Marketta Burrell testified that she last spoke with her father over the phone at around 9:05 p.m. on Thursday, October 6, 2016.  Donald Burrell's home security data showed that the doors to his home were

opened and closed a number of times between 1:49 a.m. and 2:40 a.m. on October 7, 2016. After 2:40 a.m., Donald Burrell's doors did not open again until Joel Burrell called 911 on October 9. In addition, Hampton Firefighter Aaron Brown testified that he believed that Donald Burrell had been dead for "at least over 24 hours" as of October 9, 2016. Dr. Gunther, an expert in forensic pathology who performed the autopsy, testified that "[i]t kind of looks like a couple days of decomp" when the body was ultimately discovered on October 9.[2]

The record also supports the finding that Joel Burrell was at his father's home when Donald Burrell was murdered. When Detective Buchanan compared the cell tower information from Joel Burrell's cell phone of the time when he was at his father's home on October 9 and the location data for the time when Donald Burrell was killed, Detective Buchanan testified that "the location information for both of these dates are very similar and pretty consistent with each other." Detective Buchanan's expert testimony provided the basis for the finder of fact to infer that Joel Burrell took his own cell phone with him when he went to his father's home during the early morning of October 7. The jury could also consider the fact that Donald Burrell's home did not show signs of a forced entry – and that Joel Burrell had a key to his father's home, which Joel Burrell later gave to Sergeant Neal.

Joel Burrell's false statements to the police also support the finding that he killed his father on October 7, 2019 – and that he was trying to conceal his guilt of the crime. *See Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) ("[T]he fact finder may conclude regarding even a non-testifying defendant that his false statements establish that he has lied to conceal his guilt."). Notably, on the day that Donald Burrell's body was discovered on October 9, Joel Burrell lied to

---

[2] While two witnesses testified that they saw Donald Burrell alive on the evening of Friday, October 7, 2016, "the trier of fact is free to believe or disbelieve, in whole or in part, the testimony of any witness." *Rams v. Commonwealth*, 70 Va. App. 12, 38 (2019). The trier of fact could, for example, conclude that those witnesses were simply confused about which day they had last seen Donald Burrell.

Sergeant Neal and Detective Mayer when he told both of them that he had stayed at his friend Keenan Johnson's home in Newport News from October 4 until October 9. Both Keenan Johnson and his wife, Paris, testified that Joel Burrell did not arrive at their home until around noon on October 7 – which was only hours after Donald Burrell was murdered. Furthermore, Joel Burrell also told Detective Mayer, "I never left the city of Newport News," yet he was seen in security footage in Hampton on the morning of October 7.

In addition, the evidence provides support for the finding that Joel Burrell used a firearm to kill his father. Despite the fact that a firearm was not recovered in this case, Hampton police officers found multiple shell casings near Donald Burrell's body inside his home. The medical examiner, Dr. Gunther, also testified that Donald Burrell died from 13 to 15 gunshot wounds to the upper portion of his body.

In short, given that Joel Burrell was at his father's home in the early morning of October 7, 2016, when his father was shot 13 to 15 times and given that he lied to the police about where he was in the days surrounding his father's murder, we certainly cannot say that no rational factfinder could have found the evidence sufficient for Joel Burrell's conviction for second-degree murder. In addition, because Donald Burrell was murdered after being shot 13 to 15 times and because he was surrounded by shell casings from a firearm, we also cannot say that no rational factfinder could have found the evidence sufficient for Joel Burrell's conviction for use of a firearm in the commission of a felony. Furthermore, the circuit court clearly did not abuse its discretion when it granted the jury instruction regarding the use of a firearm in the commission of a felony.[3]

---

[3] Jury Instruction 13 also accurately stated the elements of the crime of use of a firearm in the commission of a felony as Code § 18.2-53.1 states, "It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm . . . while committing or attempting to commit murder."

## III. CONCLUSION

For all of the foregoing reasons, we affirm the judgment of the circuit court, and we uphold both of Joel Burrell's convictions.

*Affirmed.*