COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Causey and Bernhard

KEVIN JOHN MCCOY

v.      Record No. 1012-24-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
AUGUST 5, 2025

FROM THE CIRCUIT COURT OF PAGE COUNTY
Clark A. Ritchie, Judge

(Caleb J. Routhier, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Katherine Quinlan Adelfio,
Senior Assistant Attorney General, on brief), for appellee.


A Page County jury convicted Kevin John McCoy of possessing a firearm as a convicted

felon. By final order entered on May 20, 2024, the trial court sentenced him to five years'

incarceration. On appeal, McCoy argues that the trial court erred denying his motion to suppress

evidence seized from his vehicle. He also challenges the sufficiency of the evidence. Finding no

error, we affirm.[1]

BACKGROUND[2]

In the early morning hours of February 28, 2023, Page County Sheriff's Deputy Debellaistre

pulled over a Jeep after seeing it swerve between lanes with its headlights off. Deputy Debellaistre

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] After examining the briefs and record in this case, the panel unanimously holds that oral
argument is unnecessary because "the dispositive issue or issues have been authoritatively
decided, and the appellant has not argued that the case law should be overturned, extended,
modified, or reversed." Code § 17.1-403(ii)(b); Rule 5A:27(b).

[2] On appeal, "we review the evidence in the 'light most favorable' to the
Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting

approached the driver's window and asked the driver—McCoy—for his driver's license and registration. McCoy's wife, Sharon Williams, was the front seat passenger, and their three children were in the back seat. Williams was not wearing a seatbelt, so Deputy Debellaistre also requested her identification. Deputy Debellaistre observed "a fake inspection sticker on the vehicle as well."

Deputy Debellaistre then "return[ed] to [his] patrol car" and "manually r[an]" McCoy's and Williams's information "through [the] dispatch center." He learned that Williams "was wanted [in] another jurisdiction for a capias on drug charges." Accordingly, he returned to the Jeep, informed Williams that she was under arrest, ordered her to exit, and handcuffed her. McCoy remained in the driver's seat.

When Deputy Debellaistre searched Williams's wallet incident to arrest, he discovered "a small baggie which contained a crystal-like substance" that he suspected was methamphetamine.[3] Williams then "requested a jacket out of the front seat," which Deputy Debellaistre retrieved. Deputy Debellaistre searched the jacket because Williams "was placed under arrest" and he had "already found narcotics." In the jacket, he found two small jars containing "a crystal-like substance which [he] believed was methamphetamine at the time" and six rolled-up dollar bills containing white residue.

Deputy Debellaistre then ordered McCoy to exit the Jeep so that he could remove the fake inspection sticker and search the vehicle. Deputy Debellaistre and his partner attempted to scrape the sticker off the windshield but could not "due to it being glued on there." Deputy Debellaistre then searched the Jeep. On the front passenger floorboard, he found a black box "contain[ing] a

---

*Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

[3] Williams carried her wallet with her when she exited the vehicle.

large quantity of a crystal-like substance." In the center cup holder, he found six pills later determined to be Fentanyl.

Deputy Debellaistre then located "a loaded handgun . . . wedged" between the front passenger seat and the center console. When he "pulled it out and cleared it," McCoy "voluntarily stated that [it] was Sharon's gun." Deputy Debellaistre then "went around to the driver's side," and saw a piece of clothing covering the gearshift lever in the center console. He lifted the clothing and saw a "KelTec firearm with the handle facing the driver's seat" and "the barrel facing the passenger's seat."

A grand jury indicted McCoy for possessing a firearm as a convicted felon. Before trial, McCoy moved to suppress the evidence seized from the Jeep, arguing that the search violated his Fourth Amendment rights. At the suppression hearing, Deputy Debellaistre testified that when McCoy was in the Jeep's driver's seat, he would have had "read[y] access" to the KelTec firearm.

McCoy testified at the suppression hearing that after Deputy Debellaistre removed him from the vehicle, he stood beside the driver's door. Both Deputy Debellaistre and his partner unsuccessfully attempted to remove the inspection sticker from the windshield. While the officers were scraping the sticker, they spilled a cup of coffee that was in the center console. One of the officers retrieved paper towels from the patrol car to wipe up the spill. Then they gave McCoy a summons for the unlawful sticker. McCoy estimated that the officers were inside the passenger compartment for about five minutes.

According to McCoy, Deputy Debellaistre said that once he "finished cleaning up [the] mess," McCoy would be "able to leave." Deputy Debellaistre also informed McCoy that they would take Williams to the county jail and McCoy "could come there after a certain period of time to bail her out." McCoy claimed that the officers "allowed [him] to get back into the vehicle." He fastened his seatbelt, "started the vehicle, and was pulling off" when the officers ordered him to stop

because "they had found something" on Williams. Only then, McCoy claimed, did the officers search the Jeep and find the two firearms.

The Commonwealth recalled Deputy Debellaistre, who testified that he had decided to search the Jeep after he found the suspected narcotics in Williams's wallet and jacket. Deputy Debellaistre never allowed McCoy to reenter the vehicle. Deputy Debellaistre clarified that he had explained "the magistrate process" to McCoy, and told McCoy what he could do "if he was free to go and nothing else was located." But Deputy Debellaistre never told McCoy that he was free to leave, and McCoy did not attempt to do so.

McCoy argued that, when the officers told him he was free to leave and allowed him to reenter the vehicle, they ended the seizure effected by the initial traffic stop. He claimed that the officers then seized him again when he attempted to drive away, searched the Jeep, and located the firearms. McCoy argued that the officers lacked probable cause for the second seizure and search, particularly given that they saw no contraband when they were inside the vehicle attempting to remove the sticker.

The Commonwealth responded that the entire encounter constituted a single seizure. It asked the trial court to deny the motion to suppress because the officers "acted appropriately" and did not violate McCoy's constitutional rights.

The trial court denied the motion. The trial court credited Deputy Debellaistre's testimony to the extent that it conflicted with McCoy's. The court noted that the officers lawfully arrested Williams on an outstanding capias. The officers found suspected illegal drugs during the subsequent lawful search of Williams and her jacket. The trial court found that it was "reasonable to believe that further evidence might be found in the vehicle." The trial court therefore found that the officers' search of the car was lawful under *Arizona v. Gant*.[4]

---

[4] 556 U.S. 332 (2009).

Deputy Debellaistre and McCoy were also the key witnesses at the jury trial. Deputy Debellaistre testified that when he found the firearm wedged between the passenger seat and the center console, McCoy stated that it "was Sharon's gun." But McCoy said nothing when Deputy Debellaistre found the KelTec firearm concealed near the gearshift lever.

McCoy testified in his own defense. He stated that he had "just purchased" the Jeep several days before the stop. Further, he explained to the jury that "the whole vehicle was full of stuff" because they "were in the process . . . of moving things from one house to another." McCoy denied knowledge that either firearm was present in the Jeep. He stated that it "would have been hard to say what exactly was in the vehicle" because he was "not going to pat" his wife down before she entered the car.

McCoy also expressly denied telling Deputy Debellaistre at the scene that the first firearm belonged to Williams. Rather, he claimed that when Deputy Debellaistre "held up" that firearm, McCoy said "you're a liar. There ain't no guns in there."

McCoy moved to strike the evidence, arguing that the Commonwealth failed to prove beyond a reasonable doubt that he knowingly and intentionally possessed a firearm. The trial court denied the motion. The jury convicted McCoy. He now appeals, challenging the trial court's orders denying his motion to suppress and his motions to strike the evidence.

ANALYSIS

I. Motion to suppress

"In this Court, [McCoy] 'bears the burden to show that the [trial] court committed reversible error by denying [his] motion to suppress.'" *Ayala v. Commonwealth*, 79 Va. App. 41, 49 (2023) (alterations in original) (quoting *Keepers v. Commonwealth*, 72 Va. App. 17, 33 (2020)). A defendant's "claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal." *Baskerville v. Commonwealth*, 76

- 5 -

Va. App. 673, 684 (2023) (quoting *King v. Commonwealth*, 49 Va. App. 717, 721 (2007)). We defer to the trial court's factual findings, reviewing them "only for clear error," and "giv[ing] due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* (quoting *Long v. Commonwealth*, 72 Va. App. 700, 712 (2021)). But we "independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements." *Id.* (quoting *Shifflett v. Commonwealth*, 47 Va. App. 141, 145 (2005)).

Under the Fourth Amendment's prohibition against unreasonable searches and seizures, "[w]arrantless searches are per se unreasonable, subject to a few specifically established and well-delineated exceptions." *Parady v. Commonwealth*, 78 Va. App. 18, 28-29 (2023) (quoting *Megel v. Commonwealth*, 262 Va. 531, 534 (2001)). One such longstanding exception applies to automobiles. *Collins v. Virginia*, 584 U.S. 586, 591 (2018). Under this exception to the warrant requirement, police officers "may search an automobile without having obtained a warrant so long as they have probable cause to do so." *Id.* at 592. This exception is grounded in both the "ready mobility" of motor vehicles, and the fact that such vehicles are already subject to "pervasive regulation." *Id.* (quoting *California v. Carney*, 471 U.S. 386, 390, 392 (1985)). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of *every part of the vehicle and its contents* that may conceal the object of the search." *Wyoming v. Houghton*, 526 U.S. 295, 301 (1999) (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)).

Probable cause to search a vehicle exists when "there is a fair probability that contraband or evidence of a crime will be found" there. *Curley v. Commonwealth*, 295 Va. 616, 622 (2018) (quoting *Jones v. Commonwealth*, 277 Va. 171, 178 (2009)). When determining whether an officer had probable cause to search, a court assesses the "historical facts . . . viewed from the standpoint of an objectively reasonable police officer." *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48,

56-57 (2018)). "Probable cause 'is not a high bar,'" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Wesby*, 583 U.S. at 57 (first quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014); and then quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). When determining whether probable cause existed, a reviewing court must examine the totality of the circumstances rather than any fact in isolation. *Id.*

Having reviewed the record, we conclude that the officers had probable cause to search the Jeep for illegal narcotics.[5] After Deputy Debellaistre removed Williams from the car, he found suspected narcotics in both her wallet and her jacket. Deputy Debellaistre knew that both the wallet and the jacket were in the Jeep's passenger compartment at the time of the stop. Thus, Deputy Debellaistre knew that multiple pieces of contraband were in the Jeep at the time he stopped it.

A reasonable officer considering these facts could conclude that there was a "fair probability" that the Jeep contained additional illegal narcotics. By analogy, if Deputy Debellaistre had seen the same suspected narcotics in plain view inside the Jeep at the beginning of the encounter, he would have had probable cause to search the Jeep for additional narcotics. The fact that Deputy Debellaistre discovered the narcotics by different, lawful means does not make that inference any less reasonable. Accordingly, the officers had probable cause to search the Jeep. Thus, the trial court did not err in denying McCoy's motion to suppress evidence that the police seized during the search.

---

[5] As noted above, in denying McCoy's motion to suppress, the trial court relied on *Arizona v. Gant*. In *Gant*, the United States Supreme Court held that police officers lawfully may search a vehicle after arresting a recent occupant if it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." 556 U.S. at 333 (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in the judgment)). McCoy argues that *Gant* is inapplicable because the officers arrested Williams on an outstanding capias; thus, there could be no additional evidence related to the capias in the vehicle. Given our conclusion that the officers had probable cause to search the Jeep, we need not address McCoy's argument that the trial court misapplied *Gant*.

II. Sufficiency of the evidence

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

To convict a defendant of unlawfully possessing a firearm,[6] "the Commonwealth must prove beyond a reasonable doubt that the accused was aware of the presence and character of the [firearm] and that the accused consciously possessed it." *Yerling v. Commonwealth*, 71 Va. App. 527, 532 (2020); *see Myers v. Commonwealth*, 43 Va. App. 113, 122 (2004). "Possession and not ownership is the vital issue." *Smallwood v. Commonwealth*, 278 Va. 625, 631 (2009) (quoting *Burnette v. Commonwealth*, 194 Va. 785, 792 (1953)). In proving possession, as with any other element, "[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence[,] provided that the circumstantial evidence is sufficiently convincing to exclude

---

[6] It is unlawful for "any person who has been convicted of a felony" to "knowingly and intentionally possess or transport any firearm." Code § 18.2-308.2(A).

every reasonable hypothesis except that of guilt." *Finney v. Commonwealth*, 277 Va. 83, 89 (2009) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)).

Further, "proof of actual possession is not required; proof of constructive possession will suffice." *Yerling*, 71 Va. App. at 532 (quoting *Walton v. Commonwealth*, 255 Va. 422, 426 (1998)); *see Bolden v. Commonwealth*, 275 Va. 144, 148 (2008). The Commonwealth proves that a defendant constructively possessed a firearm by establishing "acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the [firearm] and that the [firearm] was subject to his dominion and control." *Commonwealth v. Garrick*, 303 Va. 176, 183 (2024). "While the Commonwealth does not meet its burden of proof simply by showing the defendant's proximity to the firearm, it is a circumstance probative of possession and may be considered as a factor in determining whether the defendant possessed the firearm." *Bolden*, 275 Va. at 148; *see Hall v. Commonwealth*, 69 Va. App. 437, 448 (2018) (holding that "ownership or occupancy of premises on which the [firearm] is found" and "proximity to" the firearm "are probative factors to be considered in determining whether the totality of the circumstances supports a finding of possession").

We conclude that a rational factfinder viewing the evidence in the light most favorable to the Commonwealth could conclude that McCoy possessed the KelTec firearm. The firearm was concealed near the gearshift lever, within arm's reach when McCoy sat in the driver's seat. Although this proximity does not conclusively establish that he possessed the firearm, it is probative of a finding that he did so. *See Garrick*, 303 Va. at 184; *Hall*, 69 Va. App. at 448. Additionally, "[t]he probative value of [McCoy's] proximity to the [firearm] increased given that he was the" driver—and purported owner—of the Jeep. *Garrick*, 303 Va. at 184. Specifically, the

firearm's location near the gearshift lever strengthens the inference that McCoy, as the driver, was aware of the firearm's nature and presence. *See Yerling*, 71 Va. App. at 532.

Further, at trial McCoy expressly denied knowing that either firearm was in the Jeep. He also claimed that he did not state that the firearm wedged between the passenger seat and the center console was "Sharon's gun," as Deputy Debellaistre testified. Indeed, he testified that he had accused Deputy Debellaistre of lying when he stated that he found a firearm in the Jeep because there were no "no guns" in there.

"In its role of judging witness credibility," the jury was "entitled to disbelieve" McCoy's "self-serving testimony" and conclude that he was "lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). "[I]f the jury did disbelieve [McCoy], it was further entitled to consider whatever it concluded to be perjured testimony as affirmative evidence of guilt." *Wright v. West*, 505 U.S. 277, 296 (1992).

In sum, a jury viewing the evidence in its totality in the light most favorable to the Commonwealth could find that McCoy possessed the KelTec firearm that Deputy Debellaistre found in the Jeep near the gearshift lever.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*